**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DWAYNE A. HEAVENER, JR.,**

    Plaintiff,

v.                                                                                      **CIVIL ACTION NO. 3:12-CV-68
(JUDGE GROH)**

**QUICKEN LOANS, INC.,
ADVANCED MORTGAGE SERVICES, INC.,
and ORTH APPRAISALS, LLC,**

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT QUICKEN
LOANS INC.'S MOTION FOR SUMMARY JUDGMENT</u>**

**I. Introduction**

This matter is currently before the Court on Defendant Quicken Loans, Inc.'s ("Quicken Loans") Motion for Summary Judgment [Doc. 92], filed on October 8, 2013. Defendant moves for summary judgment on the single claim remaining against Quicken Loans, Count II–predatory lending. On October 29, 2013, Plaintiff Dwayne A. Heavener, Jr. ("Heavener") filed his response to Quicken Loans' Motion for Summary Judgment. On November 7, 2013, Quicken Loans filed its Reply. Therefore, Quicken Loans' motion is ripe for this Court's review. For the following reasons, this Court **GRANTS** Defendant Quicken Loans' Motion for Summary Judgment.

**II. Factual Background**

Heavener is a high school graduate and has received various technical computer

1

programming certifications. Since 2002, he has worked as an information technology specialist for the Federal Emergency Management Agency. Heavener is primarily a problem solver for hardware and software issues. He has been successful in his career and received several promotions based on his job performance.

Heavener acknowledged that he is an experienced borrower and has received several loans. Around 1994, he received a $7,000 loan from Apple Federal Credit Union to purchase a vehicle. Around 2002, he received a loan from Midway Federal Credit Union to purchase a Toyota Corolla. He also received six loans from Pentagon Federal throughout 2005 to 2011. Heavener admitted that he would shop around for loans that offered competitive interest rates. Heavener also acknowledged that the various loans had different interest rates and time periods to repay the loan. Heavener also has a few credit cards. In reviewing his previous payments, he easily defined a minimum charge. He also routinely made payments in excess of the minimum charge in order to quickly pay the credit card debt and pay less interest over time. In reviewing paperwork to receive a loan, Heavener agreed that generally he reads and understands the terms in documents prior to signing them and that by signing such documents, he is contractually bound by its terms.

In 2004, Heavener decided to purchase a home. In considering which property to buy, he took into account the property's location and its price. In June 2004, Heavener purchased real property located at HC 87 23-4, Yellow Spring, Hampshire County, West Virginia, 26865. In financing his home, Heavener knew he wanted a 30 year fixed rate loan so that his payments were stable and did not unexpectedly increase. However, the loan broker from Advanced Mortgage advised Heavener that he

was not eligible to receive that type of loan. Instead, the loan broker suggested a first mortgage and second mortgage. The first loan was a $120,000 fixed rate loan, and the second loan was a $30,000 home equity line of credit loan. This arrangement is commonly known as an 80/20 loan.

In August 2005, Heavener refinanced his mortgage with Bank of America because he wanted to consolidate the two loans and extinguish the home equity line of credit loan. When he refinanced, Heavener then had a note in the amount of $154,400 as well as an additional note in the amount of $24,000.

In 2007, Heavener entered into discussions with Quicken Loans regarding a possible refinance of his existing mortgage loan with Bank of America. Heavener discussed with Quicken Loans the Smart 30 program, which is a five year interest only loan that rolled into a 30 year fixed loan at a 5.75 percent interest rate. Heavener liked this loan option because it would lower his monthly payment, consolidate his debt, and give him additional money to pay off some existing debt. Heavener had multiple conversations with Quicken Loans' representatives over a period of one to two months. During this time period he asked questions regarding the loan, and the Quicken Loans' representative would "get back to [him]."

Although Heavener alleged he was offered the Smart 30 program during telephone conversations with Quicken Loans' representatives, at the loan closing, he read, reviewed, and agreed to a loan option that had a ten year interest only loan that then rolled into a 30 year fixed rate loan. Heavener agreed that, at the time of signing the loan documents, he understood 120 months to mean ten years. He also testified that he signed the documents, indicating that he had read and agreed to its terms. On

May 25, 2007, Heavener closed his loan with Quicken Loans for $195,600. Initially, the loan amount was for $184,000, however, Heavener elected to borrow an additional $11,000 to pay off existing debts that had higher interest rates.

The actual closing took place at Heavener's home. Heavener and a female representative of Quicken Loans, the closing agent, sat at his kitchen table. The closing agent went through a packet titled "Frequently Asked Questions About The Closing Process," including a section explaining Heavener's three-day right to rescind the agreement. Heavener admitted he had the packet in his possession, he had time to review it, and he was able to read it. Heavener stated the closing agent reviewed the loan documents by summarizing each page and indicated where he should sign or initial on each page. Heavener stated that he had time to ask questions about the document before he signed it, but he felt that the closing agent's body language was "let's get this over with type of thing." The entire closing took about an hour and a half to two hours.

### III. Procedural Background

On June 25, 2012, Heavener filed his Complaint in the Circuit Court of Hampshire County, West Virginia, against Defendants Quicken Loans, Indymac/OneWest, Advanced Mortgage, and Orth Appraisals. On July 27, 2012, Quicken Loans, with the consent of OneWest and Orth Appraisals, removed the civil action to the Northern District of West Virginia pursuant to this Court's diversity jurisdiction.

On April 11, 2013, Quicken Loans filed a motion to dismiss all claims against it. On June 5, 2013, this Court granted in part and denied in part Quicken Loans' motion. This Court dismissed all counts against Quicken Loans except Count II of Heavener's Amended Complaint alleging predatory lending. On October 8, 2013, Quicken Loans filed a motion

for summary judgment on the single remaining claim.

## IV. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. See Fed. R. Civ. P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

## V. Discussion

Quicken Loans argues that it is entitled to summary judgment because there is

no genuine issue of material fact and Heavener's predatory lending claim fails as a matter of law. Heavener contends that Quicken Loans engaged in a pattern of home equity predatory lending practices to make unfair loans in order to transfer the home equity from borrowers to the lender, in violation of West Virginia Code § 46A-2-121, which prohibits unconscionable contracts.

West Virginia Code § 46A-2-121 states, in pertinent part:

With respect to a transaction which is or gives rise to a . . . consumer loan, if the court as a matter of law finds:

(a) The agreement or transaction to have been unconscionable at the time it is made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or

(b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.

W. Va. Code § 46A-2-121(1)(a-b). However, "a charge or practice expressly permitted by this chapter is not unconscionable." W. Va. Code § 46A-2-121(3).

The Act does not define the term "unconscionable." The West Virginia Supreme Court of Appeals "has relied on the definition provided in the Uniform Consumer Credit Code ('Consumer Credit Code'), the unconscionability provisions of which are identical to West Virginia Code § 46A-2-121(2)(a) and (b)." Quicken Loans, Inc. v. Brown, 737 S.E.2d 640, 656-67 (W. Va. 2012) (citations omitted). In relying on the drafters of the Consumer Credit Code's comments, the West Virginia Supreme Court of Appeals stated that "[t]he basic test is whether, in the light of the background and setting of the market, the needs of the particular trade or case, and the condition of the particular

6

parties to the conduct or contract, the conduct involved is, or the contract or clauses involved are so one sided as to be unconscionable under the circumstances existing at the time the conduct occurs or is threatened or at the time of the making of the contract." Brown, 737 S.E.2d at 657 (citing Arnold v. United Cos. Lending Corp., 511 S.E.2d 854, 860 (W. Va. 1998), overruled, in part, on other grounds, Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550 (2012)).

A contract is not unconscionable "merely because the parties to it are unequal in bargaining position" or "the inequality results in allocation of risks to the weaker party." Id. Instead, a contract may be unconscionable if "gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion or may show that the weaker party had no meaningful, no real alternative, or did not in fact assent or appear to assent to the unfair terms." Id. Thus, in examining whether a contract or its terms are unconscionable, a court "must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." Id. A party claiming a contract is unconscionable must demonstrate both procedural and substantive unconscionability. Nelson, 737 S.E.2d at 558 (citations omitted).

### A.  Procedural Unconscionability

Procedural unconscionability requires "gross inadequacy in bargaining power." Adkins, 303 F.3d at 502 (quoting Troy Mining Corp. v. Itmann Coal Co., 346 S.E.2d 749, 753 (W. Va. 1986)). "These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms;

7

the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syl. Pt. 17, Brown I.

First, Heavener's age, literacy, and sophistication as a consumer do not weigh in favor of procedural unconscionability. Heavener graduated from high school and completed various computer programming certifications. Since 2002, he has been employed as an information technology specialist with FEMA. He is certainly a well educated and literate individual. Compare State ex rel. Saylor v. Wilkes, 613 S.E.2d 914 (W. Va. 2005) (weighing an employee's "tenth grade education" in favor of finding an employee agreement unenforceable). Additionally, Heavener labeled himself as an "experienced borrower," and he has received several loans and even previously refinanced his home. He understands the concepts of minimum payments and interest charges as demonstrated by his various financial decisions, such as refinancing his home and using the additional cash amount to pay down higher interest debt and routinely paying more than the minimum amount due on his monthly credit card payment. Heavener did not allege or present evidence that his age weighs in favor of finding that he is an unsophisticated consumer. See Arnold, 511 S.E.2d at 854 (finding an agreement unconscionable based upon predatory lending because United Lending was a national lending institution and the Arnolds were elderly, uneducated consumers). Therefore, Heavener's age, literacy, and experience as a consumer do not weigh in favor of finding procedural unconscionability.

Second, the loan documents did not contain any hidden or complex terms. Heavener testified that the closing agent reviewed each page by summarizing its

contents. Heavener also admitted that the loan documents contain several statements that the loan was interest-only payments for 120 months. Heavener stated that he knew 120 months meant ten years. Indeed, Heavener presented no evidence in his response that the loan documents contained hidden or complex terms.

Third, Heavener has not presented any evidence–in the form of affidavits or otherwise--that the loan documents were presented to him on a "take-it-or-leave-it" basis. Even assuming *arguendo* that the loan documents constituted an adhesion contract, "[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders, 717 S.E.2d 909, 921 (W. Va. 2011) (quoting State ex rel. Dunlap v. Berger, 567 S.E.2d 265 (W. Va. 2002)). The West Virginia Supreme Court cautioned that although adhesion contracts include all form contracts submitted by one party on the basis of this or nothing, "[s]ince the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable." Pingley v. Perfection Plus Turbo-Dry, LLC, 746 S.E.2d 544, 550 (W. Va. 2013). In this case, the loan application process lasted one to two months and involved numerous exchanges between Heavener and Quicken Loans. Heavener admitted that he asked questions, which were subsequently answered by Quicken Loans' representatives. Additionally, Heavener did not argue that he had no meaningful alternative, such as whether or not there were other financial institutions he could have applied to in order to refinance his home. See Ciampi v. Dan Ryan Builders, Inc., Civ.

Action No. 3:10-CV-55 (N.D.W. Va. July 15, 2010) (finding that the homeowners "were free to seek the services of another homebuilder, as [Defendant] [wa]s not the only residential builder in operation in Berkeley County, West Virginia"); see also Saturn Dist. Corp. v. Williams, 905 F.2d 719, 727 (4th Cir. 1990) ("[T]he mere fact that Saturn requires dealers to agree to its arbitration provisions in order to obtain a Saturn dealership does not make its Dealership Agreement non-consensual. If a dealer does not wish to agree to non-negotiable arbitration provisions, the dealer need not do business with Saturn.").

Finally, the loan closing's manner and setting provided Heavener with a reasonable opportunity to understand the terms of the contract. Although Heavener testified that the closing agent's body language was "let's get this over with type of thing," the entire closing took about an hour and a half to two hours. At the closing, the closing agent summarized each document and then directed Heavener where to initial on that page. Heavener admitted that he had the opportunity to ask questions and time to read the documents prior to signing them. In fact, at no point before or during the closing did Heavener indicate to Quicken Loans that he did not wish to proceed with the loan. He also acknowledged that the agreement gave him a three-day right to rescind the contract. Therefore, for these reasons, the Court does not find procedural unconscionability.

### B. Substantive Unconscionability

The West Virginia Supreme Court of Appeals explained that "[s]ubstantive unconscionability involves unfairness in the contract itself–'overall imbalance, one-sidedness, *laesio enormis*, and the evils of the resulting contract'–and whether a

contract term has 'overly harsh or one-sided results' or is 'so one-sided as to lead to absurd results.'" Brown I, 724 S.E.2d at 287 (internal citations omitted). Courts must focus their inquiry on "vague matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Id. (internal quotation marks and footnote omitted).

In this case, Heavener testified that he refinanced his home with Quicken Loans in order to pay off his existing Bank of America mortgage, lower his monthly payment, and obtain extra money to pay off some of his debt at a higher interest rate. Heavener obtained more than $11,000 in additional money to pay off some of his debt, and Heavener specifically wanted an interest-only loan period that would permit him to pay off existing debt and lower his monthly payments. Additionally, although Heavener is paying for ten years on an interest-only loan, he was informed that he would not be subject to prepayment charges.

Heavener has also failed to point to any evidence that the agreement contained unfair terms. Although Quicken Loans charges Heavener a "finance charge," it is permitted by West Virginia law and Heavener was provided with disclosures informing him of the finance charge. Also, Heavener contends that his home was appraised far in excess of its value. However, in support of this argument, Heavener has attached only the 2007 tax records indicating an assessment value of the property. A property's market value is not the same as a property's assessment value. Heavener has presented no evidence that Quicken Loans' appraised value of the home was in excess of its market value. See Hardy Storage Co., LLC v. Prop. Interests Necessary to

Conduct Gas Storage Operations, No. 2:07-CV-5, 2009 WL 689054, *6 (N.D.W. Va. Mar. 9, 2009) (citing United States v. Certain Parcels of Land, 261 F.2d 287, 291 (4th Cir. 1958)) ("Land owners cannot submit tax assessments as evidence of a property's fair market value."). Therefore, Heavener has failed to produce more than a mere scintilla of evidence that the loan was substantively unconscionable.

Upon review of this case, "the plain language of 56(c) mandates the entry of summary judgment" against Plaintiff Heavener because he failed to "make a showing sufficient to establish the existence of an element essential to [his] case." Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393 (4th Cir. 1994). First, Heavener presented no evidence that Quicken Loans represented to him that the loan was for a five year interest only period rather than a ten year interest only period. Second, Heavener presented no evidence of a gross inadequacy in bargaining power. Third, Heavener presented no evidence of terms unreasonably favorable to Quicken Loans. In sum, Heavener has not presented a single affidavit, deposition, answer to an interrogatory, or admission on file. Therefore, Heavener failed to "satisfy [his] burden of production under Rule 56, as interpreted in Celotex and its progeny." Cray Commc'ns, Inc., 33 F.3d at 394. Accordingly, the Court **GRANTS** Defendant Quicken Loans' motion for summary judgment

## VI. Conclusion

For the foregoing reasons, this Court hereby **GRANTS** Defendant Quicken Loans' Motion for Summary Judgment. Accordingly, the Court **DIRECTS** the Clerk to terminate Quicken Loans as a party to this action.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties herein.

**Dated:** November 8, 2013

GINA M. GROH
UNITED STATES DISTRICT JUDGE